## M. COHEN ET AL. v. GRIMES & YOUNG.

Delivered February 23, 1898.

**1. Parties—Dismissal as to Surety Deceased—Replevy Bond.**

Upon suggestion by plaintiff in attachment of the death of one of the sureties on a replevin bond given by defendant who are parties to the suit by force of the statute, the court may dismiss the suit as to deceased and allow it to proceed as to the remaining defendants, without making the representative of the deceased surety a party, where the other sureties have asked for no relief against him.

**2. Attachment—Affidavit—False Pretenses—Variance.**

The statement in an affidavit for attachment that the debt was due for property obtained under false pretenses is not inconsistent with a petition averring that plaintiffs were induced to advance the defendant the sum of money sued for by his false pretenses, knowingly made, that he was the owner of certain notes which he in effect assigned to them as security, when in fact he had, for valuable consideration, assigned them to a third person.

**3. Same—Date of Maturity of Debt.**

It is not essential that an affidavit for attachment should state the date of maturity of the debt, where such date is shown by the petition.

**4. Same—Same.**

Uncertainty of a petition as to the time when the law would declare the obligation sued on matured does not affect its sufficiency to support an attachment, where it alleges enough to show that if any debt existed at all, it had matured when the suit was instituted.

**5. Same—Liquidated Demand.**

Where the action is upon a claim for money obtained upon a written obligation by false pretenses, less certain credits, it is for a liquidated demand.

**6. Assignment of Error.**

Assignments of error will not be considered where they do not state propositions and are not accompanied by propositions.

**7. Mortgage—Assignment of, Without the Notes Secured.**

A transfer of a mortgage without a transfer of the notes secured thereby will be held to vest in the assignee a beneficial interest in the debt and the property mortgaged, subject to the rights of a third party who may hold the notes.

**8. Same—Same.**

An agreement by a preferred creditor in a deed of trust that advances to him by a third person shall be repaid by the trustee from the proceeds of the property cov- ered by the trust deed, in connection with a transfer of his interest in the deed of trust, is an assignment of the debt secured by the deed of trust or so much thereof as is necessary to repay the advance.

**9. New Trial—Insufficient Ground.**

The statement of ground for a new trial which is merely to the effect that the jury found contrary to the evidence is not sufficient.

**10. Contract—Illegal Consideration.**

To invalidate a contract upon the ground that it was given to suppress criminal proceedings, the parties to it must have agreed expressly or impliedly upon the abandonment or suppression of the prosecution, and it is not enough that such is the desire or purpose actuating the person giving the obligation, when there is no agreement, understanding, or concurring intent, on the part of the obligee, to inter- fere with the course of the proceedings.

**11. Same—Compounding Crime.**

A contract to secure one for advances made in purchasing claims against a third person arising from misappropriation of money by him is not void upon the ground that it was given to suppress criminal proceedings, although the motive actuating the pledgor was the suppression of such proceedings, of which the obligee was aware, and there was a tacit or implied agreement between the obligor and the assignors of the claim, of which the obligee was not aware, that the satisfaction of the claims would avoid a prosecution.

**12. Same—Sufficient Consideration.**

An agreement to purchase and pay for claims against a third person is a sufficient consideration for an agreement to repay the purchaser the amount of his advances for such purpose.

APPEAL from Navarro. Tried below before Hon. L. B. COBB.

*Simpkins & Mays* and *McKie & Autrey,* for appellants.

*Harris, Etheridge & Knight,* for appellees.

JAMES, CHIEF JUSTICE.—H. Cohen & Co., a mercantile firm at the town of Blooming Grove, being insolvent, executed to I. P. Levy a deed of trust on all their property, preferring first, M. Cohen, a brother of said H. Cohen, for two notes of $6000 each; and second, a number of farmers to the extent of about $3700. It appears H. Cohen & Co. had had in their hands a lot of cotton belonging to said farmers, which cotton they had misappropriated by giving part of it as security for their note to ————, and the remainder as security for their note to Grimes & Young.

Some of the farmers soon after the execution of said deed of trust made affidavit against H. Cohen, and he was arrested on a criminal charge in respect to the disposition of their cotton.

M. Cohen was desirous of terminating or suppressing the criminal pro- ceeding against his brother, but was unable himself to settle the claims of the farmers. He procured Grimes & Young to do so, the latter pur-

chasing the claims of the farmers, by giving their obligation therefor at sixty days, which they paid. This was done in pursuance of the following instrument executed to them by M. Cohen:

"December 14th, 1891.

"This agreement and obligation, made and entered into this day, shows that in consideration of the fact that Grimes & Young, of Blooming Grove, Texas, have purchased the claims and interests of all the parties named in schedule "A" as preferred creditors in a deed of trust executed by H. Cohen & Co., a firm composed of H. Cohen and J. D. Stokes, on the 9th day of December, 1891, to I. P. Levy, said claims amounting to the sum of thirty-seven hundred dollars, less the credits thereon. Now, I agree, obligate, and bind myself to pay to Grimes & Young said sum of thirty-seven hundred dollars, with interest at the rate of ten per cent per annum from date until paid, which said sum shall be paid from the proceeds of the property mentioned in said trust, both real and personal, as fast as the same accumulates in the hands of the trustee.

"To secure the said Grimes & Young in the faithful performance and execution of this obligation, I hereby transfer and mortgage to said Grimes & Young my entire interest in said deed of trust, so executed by said H. Cohen and J. D. Stokes, to which reference is here made for full particulars and descriptions. Also my entire interest in the trust deed on certain real estate executed by J. D. Stokes to D. N. Rice, February 25, 1891, recorded in book 11, pages 350, 351, and 352, Deed of Trust Records of Navarro County, Texas, to which reference is here made. On the payment of said sum of money, hereinbefore specified, all of the claims of the said parties named in Schedule "A" shall become the property of M. Cohen. It is further agreed and understood, that in the event the said Levy fails to take possession under claims and replevy bonds of the goods, wares, and merchandise, embraced in said trust deed, which are now held by the sheriff of Navarro County under attachments and sequestration writs, this obligation shall be due and payable sixty days after this date.

"Witness my hand, this 14th day of December, A. D. 1891.

"M. COHEN.

"(This instrument was acknowledged by M. Cohen, before a notary.)"

It appears that after the execution of this instrument, the trustee, in pursuance of it, paid to Grimes & Young certain sums, which are credited by the judgment, and such payments continued to be made, until Stokes, the partner of H. Cohen, had the property placed in the hands of a receiver. After that it developed that the First National Bank of Corsicana was the owner of the two $6000 notes, the same having been assigned to said bank by M. Cohen prior to the said agreement with Grimes & Young. This feature of the case forms the ground upon which Grimes & Young made affidavit that the money paid by them to the farmers at the instance of H. Cohen was obtained by false pretenses.

The suit was filed January 20, 1894, to recover said sum of said H. Cohen upon said obligation of December 14, 1891, less the credits, and attachment was sued out and executed, defendant giving a replevin bond.

On February 13, 1894, M. Cohen brought a separate suit against Grimes & Young for damages for a wrongful attachment. This was consolidated with the present suit.

In the District Court the verdict was for plaintiffs, and judgment was entered accordingly.

We conclude that the evidence supported the judgment. We doubt the sufficiency of the motion for a new trial in reference to the testimony being sufficient to warrant the judgment, but as it was contended that the contract of M. Cohen with Grimes & Young which is the foundation of the action was illegal and void, we find in reference to this the following conclusion of fact:

There was evidence to show that it was M. Cohen's desire, purpose, and motive in contracting with Grimes & Young for payment by them of the claims of the farmers, to pacificate the farmers, and thereby free his brother from further prosecution on the charges which the farmers had preferred against him, and there were circumstances in evidence upon which the jury could have found that Grimes & Young were cognizant of his purpose. There was also testimony given by M. Cohen that the farmers had told him that if their claims were not satisfied they would put his brother in the penitentiary. From this we think the jury would have been warranted in finding that there was an implied or tacit understanding between him and the farmers, or some of them, that if he settled, the prosecution would be stopped. But we find that there is nothing in the testimony to show that, if such understanding between Cohen and the farmers existed, Grimes & Young had any knowledge of it.

*Opinion.*—It appears that there were three sureties in the replevy bond. A short time before the term at which the trial was had one of these sureties died, and when the case was called for trial plaintiff suggested the death of such surety, and dismissed as to him, and asked that the cause proceed as to the remaining defendants, which was allowed. Defendant and the other two sureties applied for a continuance for the purpose of making the executrix of the deceased surety a party, alleging that his estate was solvent and the executrix had not yet qualified, but was about to do so.

The sureties were parties to the suit by force of the statutes. The cause of action against the sureties did not abate by reason of the death of one of them, and article 1250 (Revised Statutes of 1895) authorized the cause to proceed against the others, upon the suggestion of such death.

Article 1259 gives the court power generally to allow plaintiff to discontinue against any party, when it would not operate to the prejudice of the other defendants. The sureties had not filed any pleading asking relief against the surety who died. In order to entitle them to affirmative relief against him, it was essential for them to allege and prove that

they or some one of them had paid more than their proportion of the debt. Glasscock v. Hamilton, 62 Texas, 143. Here they had no pleading. The estate of the deceased surety was still bound, and no prejudice appears. Mills v. Hackett, 65 Texas, 582. This disposes of the first and twelfth assignments.

The second assignment is that the court erred in not sustaining a motion to quash the writ of attachment. Three grounds were alleged:

First. That it appears from plaintiff's petition that the affidavit was not true in stating that the debt was due for property obtained under false pretenses, and that the facts alleged do not harmonize with the affidavit. The petition alleged that defendant Cohen represented to plaintiffs that he was the owner of the two notes of $6000 each, mentioned in his obligation to them, when in fact he had for a valuable consideration assigned them to the First National Bank of Corsicana, which false pretense knowingly made induced plaintiffs to advance for him the sum of money sued for, $3700. This is not inconsistent with the affidavit, nor does it show it to have been false.

Second. That neither the petition nor the affidavit shows when plaintiffs' debt matured; and

Third. That the claim sued on was not a liquidated demand. The petition does allege the maturity of the debt, as due on December 14, 1891, and there is no variance on this subject between the petition and affidavit. It is not essential that the affidavit should state the date of maturity. The petition alleged a definite date, besides set forth the contract, from which, if plaintiff was mistaken in this allegation, the date of maturity of the obligation under all the allegations could by law be determined. This action was brought more than two years after the date of the obligation. It is stated in appellant's brief that plaintiffs' petition alleged that by reason of the claim not being paid off out of the funds of Levy, the trustee, it became a moneyed demand against M. Cohen, and alleges further, first, that by reason of the fraud of M. Cohen, the obligation became a due demand against him on the day the paper was executed, to wit, the 14th day of December, 1891, or if it did not mature on that day it became due in sixty days thereafter; or if plaintiffs were mistaken in this maturity, then it became due in a reasonable time. The record does not show such pleading. Defendant refers to it as being in the original petition, while plaintiff refers to it as being in the amended petition. It is therefore apparent that a pleading containing such allegation has been omitted from the record, and we may assume its existence from appellant's statement of the fact. We think the amended allegation adds little or nothing to what is exhibited in the original pleading. Plaintiffs were in uncertainty as to when the law would declare the obligation matured under the facts thus alleged, but enough was alleged to show that, if it constituted an obligation at all, it had matured when the suit was instituted, and the precise date would be immaterial. There is nothing in the proposition that plaintiffs' demand as alleged was unliquidated.

The fourth, fifth, and sixth assignments do not state propositions and are not accompanied by propositions. They are in this form: "The court erred in not sustaining defendants' special exceptions 1 and 2." "The court erred in refusing to sustain the special exceptions contained in defendants' original answer." "The court erred in refusing to sustain exceptions numbers 3 and 4 contained in said answer," and exceptions numbers 1, 2, 3, and 4 raise a different point. We therefore do not consider these assignments. The seventh assignment is that the court erred in refusing to sustain special exceptions designated as number 5 in said answer.

This assignment if it is entitled to be considered is not well taken. A transfer of a mortgage without a transfer of the notes is not an absolute nullity. Jones on Mort., secs. 804, 805. We are of the opinion that such a transfer, as against the assignor, should be held to vest in the assignee a beneficial interest in the debt and the property mortgaged, subject of course to the rights of any third party who may hold the notes.

But the paper in question evidences more than the mere transfer of the security. In it M. Cohen agreed that Grimes & Young should be repaid this advance by the trustee Levy from the proceeds of the property mortgaged. This was a direction to Levy to treat Grimes & Young as the assignees of the debt, by paying over to them, instead of to him (Cohen), the moneys applicable to the debt until they should be repaid; in fact it was an assignment of the debt or so much thereof as was necessary, to repay them.

The thirteenth complains of the refusal of a charge to the effect that M. Cohen's simple neglect to advise Grimes & Young that the First National Bank had an interest in the $6000 notes would not of itself constitute a fraud and would not be equivalent to a representation that said bank had no interest in said notes. We believe this charge might have led the jury to believe that the fact of his contracting on the basis that the notes were his own, was not to be considered upon the issue of false representation, and was properly refused. But defendant could not have expected a more liberal charge than the following, which appears at the conclusion of the charge given: "The particular alleged false statement set up by plaintiffs in this case that M. Cohen said he owned and controlled the two $6000 notes must from the evidence appear to have been made and to have been false, else there were no false pretenses in the case."

There are several assignments based on the insufficiency of the testimony to support the verdict. The motion for new trial brings the evidence into question only thus: "The jury found contrary to the evidence." The rules direct the district judge to ignore such a statement of ground for new trial, and obviously we can not hold that he erred in doing so. There is not a want of evidence to support the verdict in this case.

The ruling of the Supreme Court, however, makes it a fundamental

error where the obligation upon which the action is founded appears to be an illegal contract. Brewing Co. v. Templeman, 90 Texas, 281.

A large part of appellants' brief is devoted to the proposition that the obligation given by M. Cohen to plaintiffs was illegal and void, because given in fact to suppress criminal proceedings, then pending against his brother. We are of opinion that the instrument was not for this reason void. In order to render a contract void upon such ground, it is essential that the parties to it should agree, expressly or impliedly, upon the abandonment or suppression of the prosecution. It is not enough, if this is the desire or purpose actuating the person giving the obligation, when there is no agreement, understanding, or concurring intent on the part of the obligee to interfere with the course of the criminal proceedings.

In this case it is plain that the farmers' cotton had been misappropriated, and that H. Cohen & Co. were liable to them, civilly, for the value thereof. The law would not debar them from accepting satisfaction of this debt or from assigning their claim, although H. Cohen may then have been under arrest on a criminal charge growing out of the matter. Cass County v. Bricker, 52 N. W. Rep., 575; Barrett v. Weber, 125 N. Y., 19. To hold otherwise would be an unwarrantable denial of right of property in a just demand. If M. Cohen, the brother of the arrested man, had contracted with the farmers to purchase or pay their claims, it would be immaterial in respect to the force of the contract what his purpose was in doing so, provided the farmers did not become parties to his purpose, by agreement express or implied, and the fact that they may have known of his purpose or motive, without agreeing to anything on the subject, would not render the demand illegal. Ream v. Sanvain, 43 Pac. Rep., 982; Assurance Co. Edmonds, 31 S. W. Rep., 169; Small v. Williams, 13 S. E. Rep., 590.

M. Cohen, however, was not able of himself to satisfy the claims, and sought the assistance of Grimes & Young, who were able and whose interest it was to remove their claims to the cotton. He procured them to do so, obligating himself to repay them. The contract here claimed to be illegal was the contract between Grimes & Young and M. Cohen, and it seems to us clear from what has been said that unless Grimes & Young agreed in some manner when the contract was entered into, to interfere with the prosecution of the accused, this contract should not as to them be branded as illegal. The facts in evidence would probably have warranted the jury in finding that M. Cohen's object was to obtain for his brother freedom from further prosecution; indeed, it may be said to have been apparent that he had no other interest or incentive in the settlement of these claims, and that therefore Grimes & Young knew his purpose; also probably the finding from the threat made by some of the farmers to M. Cohen, that if they were not paid they would put his brother in the penitentiary, that there was a tacit or implied understanding between M. Cohen and them that his satisfying them would avoid further action against his brother, but if all this appeared it would not vitiate defendants' agreement with Grimes & Young, because

there is not a particle of evidence going to show that they had any knowledge of such an understanding. The testimony does not connect them in any way with an agreement to stifle the criminal proceeding, and the contract as to them was therefore illegal. It is not claimed by appellants that Grimes & Young knew of such agreement, if any was shown to have existed. They asked a charge presenting their theory, in effect, that if plaintiffs knew M. Cohen's purpose to have been to procure the release of his brother from prosecution, or might have known it by the exercise of ordinary care, then said obligation would be void. This charge was properly refused for the reasons above stated. Also for the reason that in such cases actual knowledge is essential, not what might have been known. It is obvious that if Grimes & Young had paid the money to the farmers, knowing that it was in furtherance of an understanding to release H. Cohen from prosecution, they would thereby have participated in the unlawful purpose, and the jury were charged that their participation in the unlawful purpose of M. Cohen would entitle defendant to a verdict.

Having reached the conclusion that the instrument, by the testimony, was a valid obligation, it follows that the jury should not have found otherwise. It becomes unnecessary to consider the tenth, eleventh, sixteenth, and eighteenth assignments. The fifteenth assignment is not entitled to be noticed, under the rules, and there is clearly no necessity to consider the fourteenth.

The nineteenth assignment of error is founded upon the idea that the contract is illegal, hence we need not notice it further.

There is presented under the sixteenth and nineteenth assignments an agreement that the contract between M. Cohen and Grimes & Young was without consideration. This idea is not embraced in the assignments, and probably should not be noticed. But we may say that the payment by Grimes & Young of the sum of $3700 for and at the instance and request of Cohen is certainly a sufficient consideration for his obligation to repay them.

The seventeenth assignment states that the verdict is opposed to the following charge of the court: "If the agreement between Grimes & Young and M. Cohen was made to secure Grimes & Young in the retention and possession of the cotton belonging to the farmers and not for the benefit of M. Cohen, or if made merely to better secure a debt owing by H. Cohen & Co. to Grimes & Young, then plaintiffs Grimes & Young should not recover." The charge is not complained of, but it is contended that the verdict was not responsive to it. No such objection to the verdict was presented by the motion for new trial, and it is not entitled to be considered here.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.