**CLAY–BUTLER LUMBER CO. v. W. R. PICKERING LUMBER CO. et al.***
(No. 1638.)

(Court of Civil Appeals of Texas. El Paso.
May 1, 1924. Rehearing Denied
May 29, 1924.)

1. **Appeal and error** ⬤⟿1052(5)—Error held not to be predicated on admission of account against defendant and rendition of judgment thereon when court found against it as basis of lien.

Where court found against plaintiff on its account for materials furnished as basis of asserted lien, but rendered judgment on an alternative claim of defendant's personal liability from recognition of indebtedness by order given plaintiff by third persons, accepted by defendant, and a check in discharge thereof, thus affecting an equitable assignment of indebtedness owing by defendant to such third persons, error cannot be predicated on admission of plaintiff's verified statement of account and the rendition of judgment based thereon.

2. **Bills and notes** ⬤⟿516—Finding of acceptance of order and promise to pay same sustained.

Evidence *held* to support finding of defendant's acceptance of order drawn on him by third persons for named sum and promise to pay same in discharge of plaintiff's account.

3. **Bills and notes** ⬤⟿69—Order held not to be "negotiable instrument" requiring written acceptance.

Order drawn on defendant by third persons authorizing him to advance drawer's check to plaintiff *held* not to be negotiable instrument within Negotiable Instrument Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—126, 6001—127, 6001—132), requiring written acceptance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

4. **Assignments** ⬤⟿50(1)—Giving order on and oral acceptance by defendant held acknowledgement of plaintiff's debt and equitable assignment to plaintiff.

Where third persons indebted to plaintiff gave order on defendant to advance their check for a named sum, giving of order and oral acceptance by defendant *held* to be acknowledgment of his indebtedness and equitable assignment to plaintiff of named amount of order, it being appropriation by third persons of part of particular fund due them by defendant in satisfaction of sum due by them to plaintiff.

5. **Garnishment** ⬤⟿108—Held to take precedence over subsequent garnishment.

Orally accepted order amounting to equitable assignment of named sum *held* to take precedence over garnishment served subsequently.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the W. R. Pickering Lumber Company against Forest Miracle, in which the Clay-Butler Lumber Company intervened. From judgment rendered, intervener appeals. Affirmed.

Hawkins, Hawkins & David, of Breckenridge, for appellant.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellees.

WALTHALL, J. This suit was brought by W. R. Pickering Lumber Company, alleged to be "a corporation duly chartered and organized and having a permit to do business in the state of Texas, and hereinafter called plaintiff," against Forest Miracle, defendant, doing business under the trade-name of Forest Miracle Petroleum Company, and also Forest Miracle Pool, as well as in his individual name, to recover a judgment in the sum of $817.45. Without stating the petition at length, the recovery is sought on two separate and distinct theories:

First, plaintiff alleged that it sold defendant goods, wares, and merchandise, consisting of lumber and rig materials to be used by defendant in the construction of a drilling rig, on the property described, block 36, in the town site of Pioneer in Eastland county, the several items and prices of said goods with the dates of sale being shown by a verified itemized account attached to and made a part of the petition, the aggregate of the several values amounting to the sum as above stated. It was alleged that said articles of merchandise were sold to defendant by and through his agents, J. W. Dunlap and Belle Cornell, operating under the trade and firm name of Dunlap & Co. and Standard Rig Company. Under this first theory for recovery plaintiff asserted a materialman's lien on the said land owned by defendant on which the rig was erected, and sought a foreclosure of said lien.

In the alternative, or second theory, plaintiff alleged that should it be mistaken in its allegation that Dunlap and Cornell, operating under either one or both of said tradenames, were the agents of defendants, or mistaken that said merchandise was sold to defendant rather than to Dunlap & Co., or Standard Rig Company, then, in such event, plaintiff alleged that it sold and delivered said merchandise to Dunlap and Cornell operating under the firm name of Standard Rig Company who, thereupon, became obligated to pay for same. Under this alternate

———

plea, plaintiff alleged that said Standard Rig Company, on or about the 4th day of August, 1922, gave plaintiff a written order on the defendant, operating under his firm or trade name of Forest Miracle Pool to pay over to plaintiff a certain check or the proceeds thereof, representing the amount due by defendant to said Standard Rig Company, in the sum of $1,325 for work in constructing said rig, the purpose of such order being to pay plaintiff the amount of its said account; that defendant accepted said order and promised to pay the amount of plaintiff's said account, and that plaintiff thereby became the equitable assignee of a sufficient amount of the fund and sum due the Standard Rig Company to pay plaintiff's said account, and that defendant became bound primarily to pay same. Plaintiff prayed for judgment against defendant for said amount, and a foreclosure of its lien. In the alternative plaintiff prayed for judgment against defendant for its said debt upon his acceptance of said order.

Defendant, Miracle, answered by exceptions, general and special, general and special denials, and special pleas, the nature of which we need not state, and prayed for the removal of the cloud from his title to the land by reason of plaintiff's claim of lien.

Clay-Butler Lumber Company, a corporation, intervened and set up, substantially, the following: That on September 6, 1922, in cause No. 3211–B, Clay-Butler Lumber Company v. J. W. Dunlap, in the District Court of Stephens county, intervener, as plaintiff, recovered a judgment against J. W. Dunlap in the sum of $2,336.58, with interest, which judgment was still valid and subsisting and wholly unsatisfied; that pending said suit, on the 6th day of July, 1922, intervener caused a writ of garnishment to be issued therein and served on the Farmers' National Bank of Cross Plains, Tex., and that said bank answered that it owed said Dunlap nothing, had none of his effects and knew of no person indebted to him; that, upon contest of said garnishee's answer, judgment was rendered in favor of intervener awarding to it a certain check signed "Forest Miracle Pool, by Forest Miracle," in the sum of $1,325 dated July 5, 1922, drawn on the First National Bank of Fort Worth, Tex., payable to Dunlap & Co., or order, which said check was subsequently turned over to intervener, and was held by it; that said check was indorsed by said Dunlap & Co. and by said Cross Plains Bank, and that said Dunlap was doing business as Dunlap & Co.; that on September 6, 1922, another garnishment was sued out in said Stephens county cause by intervener and served on Forest Miracle Pool, a trust estate, to which said garnishee made answer similar to that made by said bank in said former garnishment; that the answer of said second garnishee was con-

tested by intervener and has been consolidated with the cause in which Clay-Butler Lumber Company was then intervening; that on July 5, 1922, Forest Miracle, as Forest Miracle Pool, owed J. W. Dunlap, as Dunlap & Co., the sum of $1,325, and on said day he, as "Forest Miracle Pool, by Forest Miracle," executed and delivered to J. W. Dunlap, as Dunlap & Co., a check of that date drawn on the First National Bank of Fort Worth, for said sum, which, when paid, was to be in payment for a certain oil well rig; said check was indorsed by Dunlap & Company, and on July 6th, 1922, was deposited in that name, in the Farmers' National Bank of Cross Plains and the amount credited to Dunlap & Co.; that the above-mentioned first writ of garnishment was served on the bank on July 7, 1922; at the time of service the said check had been forwarded by the garnishee bank to the Fort Worth Bank; at the instance of J. W. Dunlap payment on the check was stopped prior to its presentation to the drawee bank, and the check returned to the garnishee bank; that the garnishee bank was the holder of said check in due course for value without notice of any adverse claim, prior to the written order of plaintiffs.

Intervener prayed that its right in said check be declared prior and superior to the claims of plaintiff or defendant; that intervener have judgment against Forest Miracle and Forest Miracle Pool for the sum of the said check, $1,325.

The case was tried without a jury. The court, after reciting the appearance of the parties, the order of consolidation of the branches of the suit, order dismissing this cause as to the Cross Plains Bank, the order as to the intervention of intervener, the order on exceptions, and certain findings which we need not state here, entered judgment in favor of plaintiff and against Forest Miracle, Forest Miracle Petroleum Company, and Forest Miracle Pool, in the sum of $817.45, interest and costs; in favor of intervener, Clay-Butler Lumber Company, and against Forest Miracle individually, and as trustee for Forest Miracle Petroleum Company, and Forest Miracle Pool, for the balance of the amount due Forest Miracle to Dunlap & Co. after deducting certain amounts mentioned, including the amount awarded plaintiff; the court further discharged Forest Miracle, individually and as trustee, as above, from claims of Dunlap & Co., doing business under name of Standard Rig Company. The court further refused plaintiff any lien as asserted by it on the property described and canceled, and discharged said lien of record.

Intervener, Clay-Butler Lumber Company, excepted to the judgment of the court, and it alone prosecuted this appeal, and filed its assignments of error.

## Opinion.

[1] The court admitted in evidence over objection of appellant appellee's verified statement of account against Forest Miracle Petroleum Company, the statement forming a portion of appellee's asserted claim of lien on the property described in appellee's petition under its first count.

Appellant's two first propositions assign error to the admission of the account, and to the rendition of any judgment in favor of appellee based on said account. The ground of appellant's contention under the two propositions is, in effect, that, by oral agreement by all parties in open court, appellee is a foreign-corporation chartered under the laws of Louisiana, and that said claim of lien and the supporting affidavit thereto attached, and the affidavit in support of the statement of account set out in its claim of lien, show that the indebtedness asserted is owing to and in favor of a Missouri corporation.

. It will be noted, however, that the judgment of the court from which this appeal is prosecuted does not rest upon any theory of liability of Forest Miracle, or any of his trade-names for the value of merchandise or rig materials furnished him by appellee as pleaded, nor upon the fixing of any lien on his property to secure same; the court found against appellee on its account for lumber and material furnished as the basis for its asserted lien, but rendered judgment on appellee's alternative claim of personal liability by reason of appellant's recognition of his indebtedness by the order given it by Dunlap & Co. and accepted by Miracle, and the check in discharge thereof, thus effecting an equitable assignment of so much of the indebtedness owing by Miracle to Dunlap & Co.

What is said above is sufficient answer to appellant's propositions 3, 4, 5, and 6.

[2] The seventh and eighth propositions assert that the evidence is insufficient to show that Forest Miracle ever accepted the order of Dunlap & Co., or Standard Rig Company, on him for the sum of $817.45, to be paid out of the check of $1,325.

The witness, Divall, local manager of appellee at Cross Plains, after identifying the following instrument, omitting the heading, which reads:

"Cross Plains, Texas. August 4th, 1922. Wm. Moore, Local Manager, Forest Miracle Pool, Fort Worth, Texas—Gentlemen: This will be your authority to advance our check in amount of $1,325.00 to W. R. Pickering Lumber Co., of Cross Plains. The above check covering the rig which we erected for your Company on block No. 36 at Pioneer.
        "[Signed] Standard Rig Co.,
                "By Belle Cornell."

—testified that he in person carried the above order and presented it to Forest Miracle. After detailing some conversation be-tween witness and Miracle not necessary to state, the witness said:

"He [Miracle] said he would take our account and send us a check for the exact amount. * * * As to what he said he would do about our claim, he said he would mail us a check, or mail it to his man, Mr. Mount, who would present us with the check. He did not send us a check as agreed. He did not send as a check directly or through his man, Mr. Mount; * * * I went over to their Fort Worth office and was informed that their account had been garnisheed by Clay-Butler Lumber Company. That was the reason given as to why the check had not been sent out. At the time I gave this order to Forest Miracle and he agreed to send me a check for the amount of our bill, J. W. Dunlap & Company then claimed that Forest Miracle owed them for building that rig; they did for the $1,325. * * * It was for the rig on block No. 36. It was the one that our material went into the construction of. This bill has never been paid. Forest Miracle, at the time he took that order and agreed to send me the check, admitted that he owed J. W. Dunlap & Co. that much money. It was just a case of paying that much of the account to me instead of paying it direct to J. W. Dunlap & Co., so he would be safe in not paying it twice."

There is other evidence in the record substantially to the same effect as the above, and Miracle's reason for not sending the check being that Clay-Butler Lumber Company had run a garnishment on him. In its alternate plea, and under which the issue of acceptance or nonacceptance of the order arises, appellee pleaded:

That "the Standard Rig Company on or about the 4th day of August, 1922, gave plaintiff a written order on defendant, operating under his firm or trade name of Forest Miracle Pool, to pay over to plaintiff a certain check or the proceeds thereof representing the amount due by the defendant to the Standard Rig Company in the sum of $1,325 for work in constructing said rig, the purpose of said order being to pay plaintiff the amount of its account aforesaid; that defendant Forest Miracle accepted said order and promised and agreed and thereby became liable to pay the amount of plaintiff's account."

The evidence, we think, is sufficient to support the finding that Forest Miracle accepted the above order, and promised to pay same in discharge of the amount of the account.

[3] The order is not a negotiable instrument; the pleading need not allege nor the evidence show the acceptance to be in writing, as insisted by appellant in its ninth and tenth propositions, as is required of bills of exchange under the Negotiable Instrument Act, arts. 6001—126, 6001—127 and 6001—132, Vernon's Texas Civil Statutes, Supplement 1922.

[4] The giving of the order by the Standard Rig Company, and its oral acceptance by Miracle of the order, was an acknowledgment of his indebtedness and an equi-

table assignment to appellee to the amount of $817.45 of the order. It was an absolute appropriation by Dunlap & Co. and the Standard Rig Company of a part of a particular fund or amount of money then due them by Miracle in satisfaction of an amount of money then due by them to appellee. 'It created an equitable interest in appellee in the money referred to and assigned by the order. Pomeroy's Equity Jurisprudence (3d Ed.) § 1280; Harris v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Campbell v. Grant, 36 Tex. Civ. App. 641, 82 S. W. 794; Cohen v. Grimes, 18 Tex. Civ. App. 327, 45 S. W. 210; Neely v. Grayson County National Bank, 25 Tex. Civ. App. 513, 61 S. W. 559; Beaumont Lumber Co. v. Moore (Tex. Civ. App.) 41 S. W. 180, in which it was held that it was not necessary for the assignment to be effectual, that the person having the fund in charge should accept the order, and referring to a number of cases.

[5] Such assignment evidently would take precedence over the second-writ of garnishment subsequently served on Miracle on the 6th day of September, 1922.

On July 5, 1922, Forest Miracle Pool, by Forest Miracle, gave a check to Dunlap & Co. payable to that company, or order, for $1,325, drawn so the First National Bank of Fort Worth, with the notation "Rig at Pioneer." Across the face of the check, were written the words "Payment stopped." The check further bears the indorsement:

"Dunlap & Co., by B. C. Pay to the order of any Bank, Banker or Trust Co. 88–1020 * * * 88–1020. Previous indorsements guaranteed. Farmers' National Bank, Cross Plains, Texas."

The witness Divall, after testifying that the lumber and material bought of appellee had been used in erecting the rig at Pioneer, testified, in effect, that at the time he gave Forest Miracle the order of August 4, 1922, Miracle agreed to send the check for the amount of appellee's bill; Miracle told him that he had stopped payment of the $1,325 check, placed in the Cross Plains Bank at the request of Dunlap; that he had a few days previous to that conversation given Dunlap & Co. a check which was at that time supposed by him to be the balance he owed them; that after giving the check he was asked to stop payment on it by a wire from Cross Plains addressed to Forest Miracle Pool. We think it sufficiently appears that the Cross Plains Bank had taken the check for collection. The check was sent for collection, but was never paid.

What we have said above applies with equal force to the garnishment served on the Cross Plains Bank on July 7, 1922. The giving of the $1,325 check on July 5, 1922, out of which was to be paid appellee's account of $817.45, was an equitable disposition by Miracle to the appellee of that amount of the check, the acceptance of the order being a subsequent recognition of it, thereby creating in appellee, at the time of the drawing of the check, an equitable interest in the check to the amount of its claim. The above authorities, we think, sustain that view. The giving of the check was prior to the service of the writ of garnishment.

Finding no reversible error, the case is affirmed.