CLAY–BUTLER LUMBER CO. v. W. H. PICKERING LUMBER CO. et al. (No. 692–4245.)

(Commission of Appeals of Texas, Section A. Oct. 28, 1925.)

1. Corporations ⟬673—Conflicting evidence as to residence of plaintiff corporation held one on an immaterial point, and trial court justified in resolving it in favor of plaintiff.

In action for goods sold and delivered, where, on trial, agreement was made that plaintiff was a Louisiana corporation, but an affidavit in the case referred to plaintiff as a Missouri corporation, *held*, that such conflicting evidence was on an immaterial point, and trial court was justified in disregarding statement in affidavit and resolving conflict in favor of plaintiff.

2. Garnishment ⟬164—Evidence held sufficient to warrant finding that check was placed with bank for collection only.

In action for goods sold and delivered, where intervener, creditor of payee, claimed check in hands of bank under a garnishment, *held*, evidence was sufficient to warrant finding that check was placed by payee with bank for collection only.

3. Garnishment ⟬56—Check placed in bank for collection no longer evidence of promise or obligation to pay after contract rescinded by stoppage of payment thereon.

Where check was placed in bank for collection by payee, parties to the check had power to rescind their contract and to prevent bank from performing its part in collecting same, and, when contract was rescinded by stoppage of payment of check by bank, check thereafter was no longer evidence of promise or obligation to pay, and was valueless if garnished.

4. Bills and notes ⟬516—Evidence held sufficient to uphold finding that defendant accepted and agreed to pay to order of transfer of fund to plaintiff.

Evidence *held* to support implied finding of trial court that third persons, indebted to plaintiff, gave order on defendant to pay to plaintiff certain sum of money, and that defendant made acceptance of, and agreed to the order of the transfer.

5. Assignments ⟬50(1), 58—Written order by third party on defendant held to constitute equitable assignment of debt to plaintiff; written order held to amount to legal assignment after defendant had made acceptance thereof.

Where third party indebted to plaintiff made written order on defendant to advance to plaintiff certain sum which defendant owed him, mutual intent of plaintiff and third person being to effect a transfer to plaintiff of debt owed by defendant to third party, *held*, that such order constituted an equitable assignment, regardless of defendant's acceptance thereof, and, when defendant's acceptance was added thereto, it constituted a legal assignment.

6. Garnishment ⟬108—Equitable assignment held superior to subsequent garnishment.

Where third party made equitable assignment to plaintiff of sum of money owing him by defendant, such assignment took precedence over right acquired by intervener under subsequently served garnishment.

7. Bills and notes ⟬69, 147—Order made in favor of plaintiff, but not to order or bearer, not a negotiable instrument, and acceptance not required in writing.

Order made in favor of plaintiff, but which was not in favor of the company, "or order," or "or bearer," lacked essential element of negotiability, in view of Vernon's Ann. Civ. St. Supp. 1922, art. 6001—1, and its "acceptance" was not required to be in writing.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by the W. H. Pickering Lumber Company against Forest Miracle, in which the Clay-Butler Lumber Company intervened. From a judgment of the Court of Civil Appeals (264 S. W. 267), affirming a judgment rendered in district court, intervener brings error. Affirmed.

Hawkins, Hawkins & David, of Breckenridge, for plaintiff in error.

Scott, Brelsford, Ferrell & Brelsford, of Eastland, for defendants in error.

Statement of the Case.

NICKELS, J. On, and prior to, July 5, 1922, J. W. Dunlap (who did business in the name of J. W. Dunlap & Co. and in the name of Standard Rig Company) was indebted as follows: (a) To Clay-Butler Lumber Company in the sum of $2,336.58, the debt being reduced to judgment, September 6, 1923, in a suit between him and the company in Stephens county; (b) to W. R. Pickering Lumber Company in the sum of $815.20 (which was increased to $817.45, August 28, 1922). On that date Forest Miracle (doing business in the names of "Forest Miracle Pool," "Forest Miracle Petroleum Company," etc.) was indebted to J. W. Dunlap in the sum of $1,325, and, on that date, he executed and delivered to Dunlap a check on the Fort Worth National Bank for that amount; the payee, as named, being "Dunlap & Co.," and the check being signed "Forest Miracle Pool, by Forest Miracle." On or prior to July 7, 1922, the check was indorsed by "Dunlap & Co." and delivered to the Farmers' National Bank, of Cross Plains, Tex., and on July 7, 1922, that bank indorsed it to "any bank or banker" and forwarded it for collection. July 8, 1922, at request of Dunlap, acting through one Cornell, Miracle "stopped payment" of the check by the Fort Worth bank, and, when the check was there presented, that bank marked across its face the words "Payment stopped" and refused to pay it; thereupon it was returned to the Cross Plains bank.

Clay-Butler Lumber Company caused to be

⟬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

issued, in the Stephens county suit, a writ of garnishment, of date July 10, 1922, against the Cross Plains bank, requiring it to answer as to effects or credits of Dunlap. The sheriff's return, as copied in the record, shows this writ was served on July 7, 1922. The bank duly answered the writ and denied being indebted to, or having effects of, Dunlap. Clay-Butler Lumber Company contested the bank's answer, and, on trial of the contest, judgment was rendered, finding that the bank held the check, with the words on it as shown, and awarded it to the company. Subsequently it was turned over to the company by the bank.

August 4, 1922, W. R. Pickering Lumber Company procured from Dunlap (in the name of "Standard Rig Company" and through Cornell) an instrument reading as follows:

"This will be your authority to advance our check, in amount of $1,325, to W. R. Pickering Lumber Company, of Cross Plains. The above check covering the rig which we erected for your company on block 36 at Pioneer." (The check of date July 5, 1922, above described, bore the notation " rig at Pioneer. ")

September 6, 1922, writ of garnishment was caused by Clay-Butler Lumber Company to issue in the Stephens county suit, against Forest Miracle in respect to debts to, or effects of, Dunlap. Miracle answered, denying debt or effects. Clay-Butler Lumber Company filed its controverting affidavit, and that case (garnishment) was transferred to Eastland county for trial.

January 24, 1923, W. R. Pickering Lumber Company filed this suit (in the District court of Eastland county) against Forest Miracle, and sought recovery of the $817.45 on alternative grounds as follows: (a) Its debt, in form against Dunlap, is in reality the debt of Miracle, Dunlap merely acting as Miracle's agent in incurring the debt; or (b) the sum of $817.45 of the $1,325 debt owed by Miracle to Dunlap was assigned by Dunlap to it in payment of Dunlap's debt to it through the written order above described, Miracle having accepted the "order" and "promised and agreed and thereby became liable" to pay the amount to the company. No evidence was offered in support of the first hypothesis, and it therefore went out of the case. Miracle duly answered with exceptions, a general denial, etc. Thereupon the garnishment suit (which had been transferred from Stephens county) was consolidated with this suit, and they were tried together. Clay-Butler Lumber Company intervened (after the consolidation), setting up its judgment against Dunlap and the garnishment proceedings described wherein it acquired the "check" of July 5, 1922. The plea in intervention also averred Miracle's indebtedness to Dunlap on July 5, 1922, the execution and delivery of the check of that date, its deposit in the Cross Plains bank by Dunlap, and giving of credit by that bank to Dunlap for the amount of the check, and that, while the check was in transit to the Fort Worth bank for collection Dunlap ("having heard that the account of Dunlap & Co. with the Cross Plains bank had been garnisheed") requested and procured stoppage of payment of the check, but that the Cross Plains bank (at the time of the garnishment) was in due course, for value, the holder of the check and (by the garnishment proceedings) the company succeeded to "all former rights and interests" of said bank "in and to" the check, and that its present rights are precedent in time (and superior) to those of W. R. Pickering Lumber Company, etc.

The Cross Plains bank was dismissed from the suit. A jury was waived, and judgment was rendered: (a) Awarding W. R. Pickering Lumber Company recovery of $817.45, with interest, against Forest Miracle; (b) awarding Clay-Butler Lumber Company recovery against Miracle in the sum of $193.62, with interest, this being the balance of the $1,325 debt after deducting the amount awarded the other company and the attorney's fees allowed Miracle in the garnishment proceeding; (c) discharging Miracle from further liability to Dunlap, etc.

The appeal was perfected and prosecuted by Clay-Butler Lumber Company alone. The judgment was affirmed by the Court of Civil Appeals. 264 S. W. 267.

### Opinion.

[1] 1. One group of assignments and propositions assert error, in that there is no evidence to show that Dunlap ever became indebted to the plaintiff by reason of purchases of goods from it, as alleged. This claim arises out of the fact that on the trial an agreement was made to the effect that the plaintiff is a Louisiana corporation having a permit to do business in Texas, whereas, it is claimed, the evidence shows that the goods were sold by a Missouri corporation of the same name. The only evidence in which a Missouri corporation is referred to is in an affidavit attached to an instrument filed in an effort to fix a lien on the lot on which the rig was located. In that affidavit an agent, refers to "W. R. Pickering Lumber Company, a corporation duly incorporated under and by virtue of the laws of the state of Missouri." This affidavit standing alone would indicate a Missouri corporation sold the goods. But it does not stand alone. There is the agreement. The petition does not allege the domicile of the plaintiff corporation. Every reference to it in pleading or proof (except in the affidavit mentioned) is to "the W. R. Pickering Lumber Company" or "said W. R. Pickering Lumber Company." The suit was filed by attorneys of the Louisiana corporation, upon facts furnished by agents of that corporation, and was tried, largely, upon tes-

timony of such agents. The affidavit referred to, in view of the final character of the suit, became wholly immaterial. The question is not one of noncorrespondence in allegata and probata, but, at most, is one of conflict in evidence upon an immaterial point. We believe the trial court was justified in disregarding the statement in the affidavit, and in resolving the conflict produced thereby in favor of the plaintiff. See Page v. Arnim, 29 Tex. 54, 74; Hays v. Samuels, 55 Tex. 560; Rische v. Bank, 84 Tex. 413, 421, 19 S. W. 610; Halfin v. Winkleman, 83 Tex. 165, 18 S. W. 433; McDonald v. Dorbrandt, 17 Tex. Civ. App. 277, 42 S. W. 1047; Jones v. Ellison (Tex. Civ. App.) 49 S. W. 406; Hawkins v. Bank (Tex. Civ. App.) 145 S. W. 722.

All other assignments of error relate to matters subsequently discussed without reference to their order.

[2] 2. The evidence was sufficient to justify the finding (implied in the judgment) that the check of date July 5, 1922, was placed with the Cross Plains bank for collection only. In the first place, Clay-Butler Lumber Company's intervention specifically avers that Miracle executed the check to Dunlap, and that the "amount when paid by said drawee bank" was to "be in payment for a certain oil well rig" furnished by Dunlap. This imports a mutual intent that Dunlap's debt was not to be considered as paid unless, and until, the Fort Worth bank should cash the check, and that implies the check was to remain Dunlap's property pending final payment at Fort Worth. Clay-Butler Lumber Company introduced in evidence certified copies of the pleadings, etc., in the garnishment proceedings. Amongst these papers were sworn pleas by the Cross Plains bank in which it was declared it took and handled the check for collection only. Amongst them, also, was the judgment in one of the garnishment cases in which it was found and decreed (February 23, 1923) that the check itself was still the property of Dunlap. In its application for the writ in the second garnishment suit the company states its belief that Miracle was still indebted to Dunlap; this is repeated in its affidavit controverting the garnishee's answer; and, finally, the company here sues upon the check itself as an assignment of the original debt from Dunlap to it, all of which was before the court, and all of which is inconsistent with the idea that the Cross Plains bank took the check otherwise than for collection. Further, Miracle, without objection, testified that he "ascertained" that the Cross Plains bank "had just taken the check for collection."

[3] With that fact in existence, the check was personal to Miracle and Dunlap. As evidence of the debt and obligation, it was Dunlap's property. In the absence of payment, it witnessed an executory agreement between them, and between them and the Forth Worth bank. They had power to rescind, therefore, and to prevent the Fort Worth bank from performing its part. Black on Rescission and Cancellation, vol. 2, § 398; Michie on Banks and Banking, vol. 2, § 139. Dunlap's request to stop payment, Miracle's agreement thereto and action thereon, and the Fort Worth bank's refusal to pay by reason thereof, rescinded the contract on the check, and the paper was no longer evidence of a promise or obligation to pay. Thereafter its value was that of the paper on which the words were impressed. Such is the property which Clay-Butler Lumber Company got when it recovered the canceled check.

3. But if the value of the "check" had not been destroyed by rescission, and the garnishment proceeding was sufficient to transfer it, Clay-Butler Lumber Company would then be the owner of a written order drawn on a certain fund; i. e., Miracle's credit in the Fort Worth bank. Stated differently (and assuming, but not conceding, the check and its transfer worked an assignment of a fund or part of a fund), the assignment was that of a part of the debt owed by the Forth Worth bank to Miracle. Any other right based on the check could not be more than a simple claim on Miracle's implied promise to pay if the bank did not. And that implied promise was personal to Miracle and Clay-Butler Lumber Company, after the company became (if it did) the owner of an unrescinded check. If the debt owed to Miracle by the Fort Worth bank were the "fund" here in question, and in respect to priorities, the check could not do more than assign a part of the fund. But an entirely different "fund" is to be considered here, i. e., the debt owed by Miracle to Dunlap, and, as to it, there can be no basis for priority in favor of that company, if the other company is found to have a legal or equitable assignment. Nor can superiority of claim be predicated upon Miracle's promise implied by the giving of the check.

[4] 4. The proof shows, undoubtedly, that on August 4, 1922, W. R. Pickering Lumber Company secured from Dunlap, and delivered to Miracle, the instrument copied in the statement of the case, above. Divall, who acted for this company, testified that he, personally, delivered the paper to Miracle, and that Miracle took it and promised and agreed to send the company a check for the amount specified, admitting at the time that he owed Dunlap "that much money," and saying that "it was just a case of paying that much of the account" to Pickering Lumber Company instead of "paying it direct" to Dunlap. There is other testimony, but this is sufficient to uphold the implied finding of "acceptance" of, and agreement to, the "order" of transfer. Consequently the assignments of error claim-

ing lack of evidence on this point are not well based.

[5, 6] The mutual intent of Dunlap and W. R. Pickering Lumber Company was to effect a transfer of the debt owed by Miracle. The written instrument made specific reference to that debt, and it was definite in amount. This constituted an equitable assignment, regardless of Miracle's "acceptance," etc. When that "acceptance" was added, there existed a legal assignment also, and Miracle became directly obligated to the company. The result of the arrangement was to give W. R. Pickering Lumber Company a right superior to that of the other company. Harris County v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Campbell v. Grant, 36 Tex. Civ. App. 641, 82 S. W. 794; Clark v. Gillespie, 70 Tex. 513, 8 S. W. 121; Milmo Nat. Bank v. Convery, 8 Tex. Civ. App. 181, 27 S. W. 828; Pomeroy's Eq. Jur. (3d Ed.) § 1280; Cohen v. Grimes, 18 Tex. Civ. App. 327, 45 S. W. 210; Neely v. Grayson County Nat. Bank, 25 Tex. Civ. App. 513, 61 S. W. 559; Beaumont Lbr. Co. v. Moore (Tex. Civ. App.) 41 S. W. 180. And, of course, the company was not ousted from that position by the second, and subsequent, garnishment proceeding.

[7] 5. The order of August 4, 1922, was made in favor of W. R. Pickering Lumber Company, and not in favor of the company "or order" or "or bearer." It lacked an essential element of negotiability therefore (article 6001—1, Vernon's Ann. Civ. St. Supp. 1922); consequently the terms of the Negotiable Instruments Law do not apply to it, and its "acceptance" was not required to be in writing. See authorities cited in the last preceding paragraph.

We recommend affirmance of the judgments of the district court and Court of Civil Appeals.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.