CATHY P. McMANAMAY,      )
                              )     **Montgomery Chancery**
        **Plaintiff/Appellee,**     )    **No. 97-01-0151**

VS.                       )

**CHARLES T. McMANAMAY,**    )    **Appeal No.**
                           )    **01A01-9802-CH-00081**
      **Defendant/Appellant.**     )

**FILED**

**November 9, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
### AT CLARKSVILLE, TENNESSEE

### HONORABLE CAROL A. CATALANO, CHANCELLOR

Gregory D. Smith
One Public Square, Suite 321
Clarksville, Tennessee 37040
ATTORNEY FOR PLAINTIFF/APPELLEE

Mark A. Rassas
Julia P. North
RASSAS & RASSAS
P.O. Box 361
Suite 104, Glenn Building
Clarksville, Tennessee 37040
ATTORNEYS FOR DEFENDANT/APPELLANT

### AFFIRMED IN PART; VACATED IN PART;
### AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR IN SEPARATE OPINION:

WILLIAM C. KOCH, JR., JUDGE
WILLIAM B. CAIN, JUDGE

| CATHY P. McMANAMAY, | ) | |
|---|---|---|
| | ) | **Montgomery Chancery** |
| Plaintiff/Appellee, | ) | No. 97-01-0151 |
| | ) | |
| VS. | ) | |
| | ) | |
| CHARLES T. McMANAMAY, | ) | **Appeal No.** |
| | ) | **01A01-9802-CH-00081** |
| Defendant/Appellant. | ) | |

# O P I N I O N

In this divorce case, the defendant husband has appealed from a decree awarding the plaintiff a divorce on grounds of irreconcilable differences and dividing the marital estate. The husband has presented the issues in the following form:

> 1. The Trial Court rushed the trial, making it difficult for the defendant/appellant to fully present his case.
>
> 2. The Trial Court erred by awarding the plaintiff/appellee an interest in the defendant/appellant's separate property.
>
> 3. The Trial Court erred in refusing to make any division in marital property that was held solely in the plaintiff/appellee's name.
>
> 4. The Trial Court erred in awarding the divorce to the plaintiff/appellee despite overwhelming grounds in favor of the defendant/appellant.

**First Issue**: Rushed Trial

The trial began at 2:30 p.m., December 10, 1997. It was concluded at 6:15 p.m. During the direct examination of the wife, the Trial Judge stated:

> Now we need to move along. I have an engagement at 5:30.

At the conclusion of the direct testimony of the wife, the Trial Judge stated:

> It's a quarter to 5:00.

-2-

Later, during the testimony of the husband, his attorney stated:

> Her honor did say she needed to leave at 5:30.

The Trial Judge responded:

> I said I had an engagement, which I do, but I can't
> leave because we are in this lawsuit.

Shortly thereafter, the Trial Judge stated:

> All right, you don't have to put this in the record. I do
> have another engagement at 6:30, a difference --- this one I
> intend to make, because that's supper.

Thereafter counsel presented their arguments, the Trial Judge announced her decision and the trial was concluded without any request for further opportunity to present evidence on the same day or a subsequent day.

On January 13, 1998, the Trial Court entered a Final Decree of Divorce.

On February 12, 1998, the husband filed a "Memorandum in Support of Defendant's Motion for Specific Findings and to Alter or Amend." Neither the motion nor the memorandum contained any reference to a hurried trial or request for additional opportunity to present evidence.

The Trial Judge has broad discretion in the conduct of trial proceedings. *Justice v. Sovran Bank*, Tenn. App. 1995, 918 S.W.2d 428. If there was any indication that the parties had not been fully heard, at the time of adjournment, the trial should have been recessed to a later date. Where there is nothing to show that a party made application to the trial court for additional time to adduce evidence, error in not extending the time cannot be urged on appeal. *Sewell v. Draughhon*, Tenn. Ch. App. 1897, 44 S.W. 210.

-3-

No merit is found in appellant's first issue.

**Second and Third Issues**: <u>Division of Property</u>

Prior to the trial, on April 14, 1997, the wife's attorney wrote the following letter to the husband:

RE:    PROPOSED SETTLEMENT, Case # 97-01-0151

Dear Mr. McManamay:

After speaking with your wife, we are in the position to make the following offer of settlement.  If you are willing to give Ms. McManamay the following items, we can settle this case without the time, expense and ill-feelings of a full-blown trial.  Said items are:

1.    Half (½) the equity of property owned on Gallant Road, Eddyville, KY.

2.    Half (½) the equity of property owned on Stratford Way, Clarksville, TN.

3.    Yamaha Jet Ski with Trailer

4.    Payment for patio furniture

5.    Payment for or return of Vacuum Sweeper

6.    Payment for or return of camera

7.    Moving expenses of $1,376.70 for moving four times at your request (to and from).

8.    Legal fees and court costs

At the trial, counsel for both parties presented opening statements in which they presented the position of their clients regarding the division of the marital estate.  The husband presented a Proposal Pursuant to Rule 18.02 which included the following:

A.    Defendant entered the marriage with the following:

1. Home in Virginia - $142,000.00 equity

2. Wingate property in Clarksville, Tennessee - $56,000.00 equity

3. Barkley Lake property - $48,270.00 equity

4. Bank accounts, including IRA - $31,150.01

5. Loan owed by Cathy to purchase her car - $8,345.00

Total assets immediately prior to marriage - $285,765.01.

All of the properties were held singly in the Defendant's name alone.

B.    Defendant's assets as of current date:

1. Bank accounts, including IRA and money market account - $75,0000 (up date this prior to trial).

2. Barkley Lake property - $170,000.00 (by current appraisal $155,000.00 by county assessment).

Current assets at this time - $245,000.00. (Does not include furnishings, vehicles, etc.)

C.    Plaintiff entered the marriage with the following:

1. Apartment six-plex in Elizabeth town, Kentucky - $21,550.00 equity.

2. House in Hudson, Kentucky - $25,000.00

3. Thrift Savings Plan - $2,601.00
4. Civil Service Retirement annuity - $31,318.32 per year.

5. Savings and other cash - $5,000.00 approximately.

6. Putnum Securities - $3,331.55

Total Assets immediately prior to marriage - $88,800.87

D.    Plaintiff's assets as of current date:

1. House in Hudson, Kentucky - $35,000.00 county assessment.

2. Thrift Savings Plan - $22,933.62 as of 9/30/97

-5-

3. House in Sharpsburg, Georgia - $121,000.00 ($6,500.00 equity).

4. Civil Service Retirement annuity - $44,578.18 per year.

5. Savings and other cash, including certificates of deposit - $32,000.00 (*Note: There is a deposit and withdrawal of $10,000.00 and $10,344,08, shown on Plaintiff's statement from Federal Employees Credit Union on July 2, 1997, which is not included.*)

6. Putnam Securities - $12,783.00 as of 6/30/97

Current assets at this time - $153,795.00

The Defendant submits that he has had a net decrease in the items in his name from the marriage of $33,988.00, while the plaintiff has had a net increase of $60,199.00. An equitable division would be fifty percent (50%) of the appreciation in the assets, meaning that the Plaintiff should pay to the defendant the sum of $30,100.00.

III. Other Items

A. Items in possession of Defendant:

| Item | Date of Purchase | Cost | Value |
| --- | --- | --- | --- |
| 1989 Pontoon Boat | 02/97 | $3,000.00 | $3,090.00 Assessed |
| 1995 Suzuki ATV | 08/95 | $4,875.00 | $3,550.00 Avg retail |
| 1995 Jet Ski w/Tri | 06/95 | $6,650.00 | $3,200.00 Avg retail |
| Patio Furniture | 09/93 | $1,100.00 | $ 500.00 |
| 1975 Aluminum Boat | 09/94 | $ 500.00 | $0-non repairable |

Total value ........................................................... $10,340.00

B. Items in possession of Plaintiff:

| Item | Date of Purchase | Cost | Value |
| --- | --- | --- | --- |
| 1995 Pontoon Mtr, Tri | 06/96 | $8,000.00 | $9,500.00 |
| Living Room Furniture | 03/94 | $3,622.00 | $3,622.00 |
| Living Room Lamps | 03/94 | $1,200.00 | $1,200.00 |
| Living Room Tables | 03/94 | $1,150.00 | $1,150.00 |
| Porch Rockers | 12/94 | $ 150.00 | $ 200.00 |
| Boos Radio | 05/96 | $ 400.00 | $ 400.00 |
| Vacuum Sweeper | 10/95 | $ 380.00 | $ 300.00 |
| King Mattress & Springs | 03/94 | $1,100.00 | $1,100.00 |
| Treadmill | 07/96 | $1,000.00 | $1,000.00 |
| Small Kitchen Appliances | 03/94 | $ 300.00 | $ 300.00 |
| Dishes | --/95 | $ 300.00 | $ 300.00 |
| Bed & Bath Linens | 03/94 | $1,000.00 | $ 500.00 |

Total Value .................................................. $19,572.00

The defendant prays that he be given an amount of cash by the Plaintiff to equal the discrepancy in the value of

the items that he has received, that being an additional $4,616.00.

The testimony of the wife includes the following:

A.      We had -- actually, we have a long history together, about eight or nine years.  But we actually moved in together in -- August of 1991.  I moved out then in July of 1992.  We began dating against in the last of October of 1992.  And, probably, from January 1993 until the time we married, while we kept separate households, we essentially stayed together and then in 1993, married.

We separated the first time in September of 1995, moved back and forth a number of times, but no real -- we were trying to work things out with the marriage, and finally separated permanently November of 1996.
- - - -
I moved out of the house on Landon Road into 551 Stratford Way.

Q.      And that was his residence?

A.      Yes, it was.
- - - -
Q.      Was your name on the deed on that house?

A.      No, it was not.

Q.      Now, when did you put your name on the mortgage for the Stratford Way house?

A.      Just shortly after we married in 1993.  Tom wanted to refinance the home, and he asked me to go sign the mortgage to have it refinanced.

- - - -
Q.      After you were married and you started actively taking part in the upkeep of this house, when did you file to refinance the house and put it in your name or put the mortgage partially in your name?

A.      It was sometime before 15 of September, 1993.
- - - -
Q.      And you continued to upkeep and maintain that -- the house was sold in, you said, February of '97?

A.      Yes.

Q.      How much equity came from the sale of this house?

-7-

A.	I believe that there was about $60,000 after the Realtor fees.

Q.	Did you have to sign paperwork for that sale to be made possible?

A.	Yes.

Q.	How much of the $60,000 equity did you get from the sale of the Stratford Way house?

A.	None.

Q.	Now, there was the house in Virginia. Did you make any sort of -- Did you go in on any sort of loans on that after you got married?
- - - -
A.	I assumed a somewhat larger portion of the bills during the time that that was on the market to assist with that, and then also went up for a week or so and helped Tom prepare the house for sale.

Q.	And about how long was the house in Virginia up for sale that you were having to pay extra bills just so that that didn't go into a foreclosure?

A.	I believe it was about September, October of 1994. And it sold, I think, in May or June of 1995. It was on the market for an extended period.

Q.	Approximately how much equity came out of the sale of that house?

A.	None.
- - - -
Q.	Now, the one I want to focus on is the house in Eddyville, Kentucky. You were referring to it as Lake Barkley.
- - - -
A.	In April of 1993, we met, I gave them a down payment of $2,500 on the property, and we bought the lot, and then proceeded to make arrangements to have a home built there.

Q.	Now, was the deed put in your name, Colonel McManamay's name or both?

A.	In Mr. McManamey's name.
- - - -
And then we actually borrowed the money and signed the final note for the loan on the house, I believe, in January of 1994.

Q.	How much was the note for?

A.	$125,000.

- - - -

Q. And your name is on the mortgage?

A. Yes, it was.

Q. Did you ever put your name on the deed to the land itself?

A. No.

- - - -

Q. And when was it paid off in full; do you remember?

A. It was paid off in full in April of 1997.

- - - -

The Lake Barkley property, in additional to the down payment on the lot, I made the house payments on that for the time period that I live there -- until September of 1995. And I paid the utilities, the -- bought appliances, vertical blinds, linens, decorating, landscaping.

- - - -

I think the house in Eddyville is worth $200,000.

Q. How much are you asking the Court for of that $200,000 in equity?

A. I'm asking the Court for half of the equity in that home at the time that it was paid off.

Q. And, as I say, the house is paid off completely?

A. Yes, it is.

- - - -

Q. Can you tell us about the total amount of savings that you have is today?

A. I can tell you that the two -- the $20,000 CDS that we've talked about were given to me by my mother for holding.

- - - -

Q. Based on the assessment value you've gotten, your house in Hudson, Kentucky has gone up too, hasn't it? It's gone up $10,000 during the marriage?

Ms. McManamay, that was real estate that you held in your name, correct?

A. Yes.

That is my mother's property, and she takes care of the maintenance and so forth.

Q. Now, you sold that six-plex in Elizabethtown, Kentucky?

A.    Yes.

Q.    How much did you get for that?

A.    I gave you a closing statement on that. I think my -- I think my amount with the -- from the proceeds came out to about $21,000.

- - - -

Q.    Now, the Hudson, Kentucky house, is that your mama's?

A.    That's my mother's.

Q.    The six-plex in Elizabethtown, when did you sell that?

A.    I sold that right at the time we married within days of the time we married in August of 1993.

Q.    And your husband never put any money towards that?

A.    No, he did not.

Q.    He never put any money towards Hudson, Kentucky?

A.    No.

The testimony of the husband includes the following:

Q.    Now, during the time of the marriage, did she ever make any mortgage payments on the Wingate property at all?

A.    No, she did not.

Q.    Did she make any of the payments on the lake house property?

A.    She made some payments on that. I believe she indicated 18, and I think that's about right, from March of '94 through September of '95.

- - - -

Q.    How did you have $48,270 in equity when you bought the lake property before you married?

A.    The land was paid for clear and free. And the house was bought under construction. And that's the costs that I had paid out at that point in time on the construction of the house.

- - - -

-10-

Q.    So you walked into this marriage, by your figures, with $285,000-plus in total assets, not counting your furnishings, personal belongings, sporting goods and so forth?

A.    That is correct, sir.

Q.    And if I flip down to Sub B of that, as of the current date, you have -- and I said, update this prior to trial, but your total bank accounts, IRAs, and other information now is approximately $75,000?

A.    That's correct, Mr. Rassas.

Q.    Now, your opinion of the value of the Barkley lake property is how much?

- - - -

A.    I believe it's closer to $170,000, Mr. Rassas.

Q.    So, if we take your value of your assets now, it's $245,000?

A.    That's correct.

The Rule 15 Schedule of the wife is as follows:

| Marital Property | Cathy's Value | Appellant's Value | Court's Value | Awarded To |
|---|---|---|---|---|
| Lake Barkley | $200,000 ($50,000 equity) [R. 18:18.02] [and Tr. 31-33] | $170,000 or $0 equity [R.21:18.02] | $170,000 ($28,000 equity) [R. 46:Judgment] | Equity Split 50/50 House to Appellant |
| Hudson, KY | Not a marital asset [Tr. 112, lines 5-9] | $10,000 [R. 21:18.02] | Not a marital asset [R.47:Judgment] [off-sets a loan] | Not a marital asset |
| Virginia House | $125,000 [R. 18:18.02] | $142,000 [R. 21:18.02] | $142,000 [R. 46:Judgment] | Appellant |
| Sharpsburg, GA House | $6,500 (Down Payment) [Tr.39, lines 17-24] | $6,500 (Down Payment) [R.21:18.02] | $6,500 (Down Payment) [R.47:Judgment] | Cathy |
| Elizabeth-town, KY Six-plex | $8,000 [Tr.122, lines 15-20] | $21,550 [R.21:18.02] | $8,000 [R.47:Judgment] | Cathy |

The Rule 15 Schedule of the husband is as follows:

| Marital Property | Plaintiff/ Appellee's Value | Defendant/ Appellant's Value | Value Found by Trial Court | Property Awarded by Court to |
|---|---|---|---|---|
| Appreciation in value of Defendant's lake house | $200,000 | Purchased with pre-marital assets- No Appreciation | $45,000 | Defendant |

| Marital Property | Plaintiff/ Appellee's Value | Defendant/ Appellant's Value | Value Found by Trial Court | Property Awarded by Court to |
|---|---|---|---|---|
| Appreciation in value of Defendant's Stratford Way house | $60,000 | $56,000 | $31,000 | Defendant |
| Appreciation in value of Plaintiff's Hudson, KY | $10,000 | $10,000 ($25,000 at time of marriage-$35,000 currently) | Not Considered | Plaintiff |
| Appreciation in value in Plaintiff's Sharpsburg, GA house | $6,500 | $6,500 | Not Considered | Plaintiff |
| Equity in Plaintiff's Elizabethtown, KY Property | $21,000 | $21,550 | Not Considered | |
| Increase in value in Plaintiff's Thrift Savings Plan | $20,332.62 | $20,332.62 | Not Considered | Plaintiff |
| Increase in value of Plaintiff's Civil Service Retirement | Unknown | $13,259-83 Per year increase | Not Considered | Plaintiff |
| Increase in value of Plaintiff's Misc. Savings Accts. | $6,000 | $26,000 (Disputed whether $20,000 in CD's was Plaintiff's or her mother's) | Not Considered | Plaintiff |
| Increase in value of Plaintiff's Putnum Securities | $9,451.45 | $9,451.45 | Not Considered | Plaintiff |

**Court awarded $22,500 additional cash to Plaintiff for equity in Lake House and $15,000 cash for equity in Stratford Way house.**

- - - -

**PERSONAL BELONGINGS**

| | | | | |
|---|---|---|---|---|
| 1995 Jet Ski w/Trailer | $5,000 | $3,200 | | Defendant |
| 1995 Suzuki ATV | $3,500 | $3,550 | | Defendant |
| 1975 Aluminum Boat | $700 | $-0- (cannot be repaired - scrap value only) | | Defendant |
| Patio Furniture | $1,000 | $500 | | Defendant |
| 1989 Pontoon Boat | Not Given | $3,090 | | Defendant |

| Marital Property | Plaintiff/ Appellee's Value | Defendant/ Appellant's Value | Value Found by Trial Court | Property Awarded by Court to |
|---|---|---|---|---|
| 1994 Truck | $15,000 | $8,500 (traded in truck owned prior to marriage for $6,500) | | Defendant |
| **TOTALS (Defendant's Property)** | **$25,200** | **$18,840** | | |
| Plaintiff's/ Appellant's Car | No Value | $6,400 | | Plaintiff |
| 1995 Pontoon Boat, Motor, Trailer | Claims Sold for $6,500 to Brother | $9,500 | | Plaintiff |
| Living room furniture | $1,200 | $3,622 | | Plaintiff |
| Living room lamps | $375 | $1,200 | | Plaintiff |
| Living room tables | $400 | $1,150 | | Plaintiff |
| Porch rockers | $100 | $200 | | Plaintiff |
| Bose radio | $ -0- | $400 | | Plaintiff |
| Vacuum sweeper | $170 | $300 | | Plaintiff |
| King mattress and springs | $300 | $1100 | | Plaintff |
| Treadmill | $200 | $1000 | | Plaintiff |
| Small kitchen appliances | $10-$15 | $300 | | Plaintiff |
| Dishes | $ -0- | $300 | | Plaintiff |
| Bed & bath linens | $300 | $500 | | Plaintiff |
| **TOTALS (Plaintiff's Property)** | **$9,560** | **$25,972** | | |

**Court awarded $7,500 additional cash to Plaintiff to equalize value of truck**.

The husband is a retired colonel of the U.S. Army. The amount of his retirement pay is not stated. The wife is 18 years younger than the husband and earns $60,000 per year. They were married four years. T.C.A. § 36-4-121(c ) states factors for consideration in division of marital estates. *Fisher v. Fisher*, Tenn. 1983, 648 S.W.2d 244.

In 1991, the husband purchased a home on Stratford Way in his own name for $135,000. The wife made no contribution to the purchase price but she was obligated on the loan and

shared expenses of maintenance. The wife valued the equity in the house at $60,000. The husband valued it at $56,000. The court valued it at $31,000 and assigned the property to the husband.

Also, prior to the marriage, the husband purchased unimproved land at Eddyville, Ky. The wife furnished the earnest money for the purchase, which husband repaid. A house was erected thereon during the marriage. The wife paid $7,900 on the construction loan and performed landscaping. The wife valued the equity in the house at $200,000. The husband insisted that the property did not appreciate during the marriage. The Court valued appreciation at $28,000 and awarded the house to the husband.

The husband owned property in Virginia of unstated value in which the wife claimed no interest.

Prior to the marriage, the wife owned three rental properties, designated as Hudson, Sharpsburg and Elizabethtown. The parties agreed that the appreciation of these properties during the marriage was $10,0000, $6,500 and $21,000, respectively, a total of $37,500, but there is no evidence that the husband contributed to the preservation or enhancement of these properties. The husband is not entitled to any part of the appreciation of these properties.

The Trial Court found that the appreciation in value of the husband's Stratford and Eddyville homes, totaling $59,000 was part of the marital estate, one-half of which would be $29,500. He awarded the wife the $7,900 paid by the wife on the Eddyville mortgage. $29,500 plus $7,900 is $37,400 which is $7600 less than the $45,000 awarded to the wife. Thus, the wife received approximately 60% of the appreciation.

Exact equality of division of the marital estate is not required. *Bookout v. Bookout*, Tenn. App. 1997, 954 S.W.1997. See also, T.C.A. § 36-4-121(c). Considering all relevant factors, this

Court is unable to ascertain from the evidence in this record what an equitable division of the martial estate should be. Pursuant to TCA §§ 27-3-128, 129, the cause is remanded to the Trial Court to hear further evidence and to adjudge an equitable division of the marital estate.

On remand, judgment will be entered accordingly.

**Fourth Issue**: Award of Divorce to Wife

The divorce decree contains the following:

7.       Plaintiff should be granted a divorce on grounds of inappropriate marital conduct due to Defendant physically striking Plaintiff in the summer of 1996 leaving heavy bruising on Plaintiff's body. The Court also considered the fact that both parties committed adultery during marriage. Since both parties were guilty of adultery, the Court did not consider these acts against either party and awarded the wife a divorce on grounds of inappropriate marital conduct consisting of physical battery by the husband.

The husband insists that he is entitled to a divorce because of the wife's admitted adultery, citing T.C.A. § 36-4-101(3). The husband admits adultery after the separation and before the divorce. T.C.A. § 36-4-112 provides:

> 36-4-112 - Defense when ground is adultery.
>
> If the cause assigned for divorce is adultery, it is a good defense and perpetual bar to the same if the defendant alleges and proves that: (1) The complainant has been guilty of like act or crime.

The clear intent of the statute is that either spouse, plaintiff or defendant, may successfully resist a charge of adultery by proving like conduct on the part of the accusing spouse.

-15-

Therefore, it was not error for the Trial Judge to disregard the adultery of both parties and to grant the divorce to the wife on proven grounds of extreme cruelty of the husband in committing a battery upon the body of the wife.

No merit is found in the fourth issue presented by the husband.

The judgment of the Trial Court as to division of marital property is vacated, and the cause is remanded to the Trial Court for further proceedings in conformity with the opinion of this Court.  Costs of this appeal are taxed equally. That is, each party shall pay one-half.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR IN SEPARATE OPINION:

WILLIAM C. KOCH, JR., JUDGE
WILLIAM B. CAIN, JUDGE